**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        |
ROBERT JACKSON,                         |          Hon. Stanley R. Chesler
                                        |          Civ. No. 00-4875
        Plaintiff,                      |
                                        |
            v.                          |          **OPINION**
                                        |
COMMISSIONER NJSP, et al.,              |
                                        |
        Defendants.                     |
_____|

**CHESLER, District Judge**

This matter comes before the Court on the motion of Defendants Jafca D. Mandziuk,

Patrick J. Callahan, and Robert Frances (collectively "Trooper Defendants") for partial summary

judgment [docket item #54].  Defendant Carl A. Williams ("Williams") separately moves to (1)

amend his Answer to Plaintiff's Amended Complaint [docket item #61], and (2) to dismiss

Plaintiff's Complaint for lack of jurisdiction or, in the alternative, for summary judgment [docket

item # 63].  For the reasons set forth below, the Court holds: (1) Trooper Defendants Motion for

partial summary judgement is denied; (2) Defendant Williams' Motion to Amend his Answer is

granted; and (3) Defendant Williams Motion to Dismiss is granted.

**BACKGROUND**

The instant lawsuit arises out of an automobile stop made by the Defendants and the

subsequent incidents surrounding Plaintiff's arrest.  Many of the critical facts in this case are in

dispute. The parties do seem to agree, however, on some preliminary facts.

## I.  Undisputed Facts

On January 6, 1999, Robert Jackson ("Plaintiff") was a passenger in a rental car driven by Gregory McCalop ("McCalop").  (Def. Br. 4; Pl. Br. 5.)  Plaintiff and McCalop were traveling in a rented Chevy Lumina on Route 78 in New Jersey at around 9:00 in the evening.  (Def. Br. 5; Pl. Br. 5.)  At that time, Defendant Troopers Callahan and Mandzuik were conducting stationary radar patrol of vehicles traveling westbound on Route 78.  (Def. Br. 5; see Pl. Br. 5.)  Defendant Callahan observed the Chevy traveling westbound and clocked its speed at 72 m.p.h.  (Def. Br. 6; Rizzo Decl. Ex. 2.)  The legal speed limit on that stretch of Route 78 is 65 m.p.h.  (Id.)  The troopers pulled off the median and began to pursue the car.  (Def. Stat. Mat. Facts. ¶ 24; Pl. Stat. Mat. Facts. ¶ 24.)   While in pursuit of the car on Route 78, the troopers did not employ their overhead lights, spotlights, siren or public address system[1].  (Pl.'s Stmt. of Mat. Facts ¶ 30.)

At Exit 11, the Chevy exited Route 78 and pulled into the parking lot of the Busy Bee Convenience Store ("Busy Bee"), approximately one-tenth mile from the off ramp.  (Id. ¶ 32; Def. Stat. Mat. Facts ¶ 43.)  Before the car exited the highway, Trooper Mandzuik observed that the Chevy had Connecticut license plates.  (Id. ¶ 36.)   Unable to exit the highway when the Chevy pulled off, Defendants accelerated the police car to a point on the highway approximately 50 yards ahead.  (Def. Stat. Mat. Facts ¶ 38, 40.)  Defendant Callahan then crossed the grass median of the

---

[1]Defendants allege that despite unsuccessful attempts,  because of the short distance between the Chevy and the vehicle traveling directly behind it, they were unable to safely move behind Plaintiff's car.  (Def. Stat. Mat. Facts. ¶ 29-30.)  Plaintiff, however, contends that Defendants never made any attempt to stop Plaintiffs car, in part, because the decision to pull over Plaintiff's vehicle was not made until Defendants learned the occupants race.  (See Pl. Stat. Mat. Facts. ¶¶ 30-40.)

highway and the eastbound lanes of Route 78, and exited the highway at eastbound Exit 11.  (Id. ¶ 41.)  The motivation for Defendants decision to follow the Chevy off the highway is heavily in dispute[2].

The Defendants spotted the Chevy in the parking lot of the Busy Bee convenience store. (Pl. Br. 8.)  Defendant Callahan ran a National Crime Information Center ("N.C.I.C") check on the Chevy and learned that it was neither stolen nor involved in any crime.  Defendant Troopers Robert Francis and Trooper Kevin Rowe heard the radio call and arrived at the scene shortly thereafter.  (Def. Stat. Mat. Facts. ¶ 52-3.)  The Troopers then entered the Busy Bee to seek the license and registration of the Chevy's driver. (Id. ¶ 51, 57.)  When asked his name, McCalop falsely identified himself as Gary Ray Devone. (Id. ¶ 61.)

The investigation continued back near the Chevy where Defendant Callahan requested McCalop  produce his vehicle registration.  (Id. ¶ 66.)  McCalop produced an Enterprise rental agreement which showed the vehicle rented to John Knight, and which did not provide for other authorized drivers.  (Id. 67.)  Defendant Callahan then questioned Plaintiff and Mr. McCalop about the origin, destination and purpose of their trip.  (Id. ¶ 70.)  McCalop then falsely identified Plaintiff as Aaron Johnson.  (Id. ¶ 71.)

After the initial questioning of McCalop, Defendant Callahan approached Plaintiff and asked him his name. (Id. ¶ 79.)   Plaintiff responded that his name was Robert Jackson and advised the officer that he had identification in the trunk of the car.  (Id. ¶ 80-1.)   Plaintiff

---

[2]In keeping with our obligations under Forbes v. Township of Lower Merion, this Court will identify all disputed material facts relevant to Defendants' qualified immunity defense separately during the discussion *infra* of Plaintiff's individual claims.  313 F.3d 144, 146 (3d Cir. 2002).

3

produced a State of Connecticut, Department of Corrections, Inmate Identification Card confirming his identity as Robert Jackson.  (Pl.'s Stmt. of Mat. Facts ¶ 83.)

Defendant Callahan received consent from McCalop to search the vehicle.  (Id. ¶ 89.) During the search, Defendant Callahan found a wallet containing McCalop's drivers license revealing his true identity as Gregory McCalop and not Gary Ray Devone, and McCalop then admitted the same.  (Id. ¶¶ 90-93.)

Defendant Callahan noticed the zipper on Plaintiff's pants was open and did not believe it had been previously open. (Id. ¶ 96-7.)   Callahan approached Plaintiff and conducted a pat frisk.. (Id. ¶ 98.)  The motivation for, and the events during the pat frisk are highly disputed between the parties.

After the pat frisk, Plaintiff began to run towards the end of the parking lot.  (Id. ¶ 104-08.) Defendants Callahan, Mandzuik and Francis immediately gave chase while Callahan commanded Plaintiff to stop.  (Id. ¶ 105-06.)  During the chase, Defendant Callahan observed Plaintiff drop a small foil package on the ground.  (Id. ¶ 108.)  Plaintiff continued running until he reached a guardrail at the edge of the parking lot.  (Id. ¶ 109.)  When Plaintiff jumped over the guardrail Callahan followed him and then tacked Plaintiff by grabbing hold of his right leg.  (Id. ¶ 110-11.) Plaintiff broke free of Callahan's grasp, ran forward, and fell down an embankment.  (Id. ¶ 112-13.)  Defendants Callahan, Mandziuk and Francis went down the embankment to retrieve the Plaintiff.  (Id. ¶ 115.)   The events that transpired at the bottom of the embankment are heavily in dispute.

After being placed in handcuffs, the Troopers assisted Plaintiff up the embankment, brought him to a Troop car, and read him Miranda warnings.  (Id. ¶ 119.)  Defendant Callahan

then retrieved the foil package he earlier saw drop from Plaintiffs person.  (Id. ¶ 121.)  The

package contained two small bags of a substance later confirmed to be vegetation laced with PCP.

(Id. ¶ 122.)  Thereafter, Plaintiff and McCalop were transported to the Perryville Station.

## II.  Procedural History

On or about October 20, 2000, Plaintiff filed his initial pro se complaint arising out of the

January 6, 1999 incident and named as defendants Troopers Mandziuk, Callahan and Francis, and

the position of "Commissioner NJSP."   On or about May 14, 2004 Plaintiff filed an Amended

Complaint removing "Commissioner NJSP" from the case and adding Carl Williams as a

defendant in his individual capacity.   Trooper Defendants filed the instant Motion for Partial

Summary Judgment on or about June 24, 2005.   Defendant Williams filed the instant motions to

amend his answer and to dismiss on July 8, 2005, and July 22, 2005 respectively.

The Court will turn first to Trooper Defendants Motion for Partial Summary Judgment,

then to Defendant William's Motions to Amend his Answer and to Dismiss.

### TROOPER DEFENDANTS MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.  Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted

"if pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248, (1986); Kreschollek v. Southern Stevedoring Co., 223

F.3d 202, 204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must construe

all facts and inferences in the light most favorable to the nonmoving party.  See Boyle v.

5

Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of

establishing that no genuine issue of material fact remains.  See Celotex Corp. v. Catrett, 477 U.S.

317, 322-23 (1986).

      The Supreme Court has stated that in evaluating a defendant's motion for summary

judgment:

> [t]he judge must ask . . . not whether . . . the evidence unmistakably favors one side
> or the other but whether a fair-minded jury could return a verdict for the plaintiff on
> the evidence presented.  The mere existence of a scintilla of evidence in support of
> the plaintiff's position will be insufficient; there must be evidence on which the jury
> could reasonably find for the plaintiff.   The judge's inquiry, therefore, unavoidably
> asks whether reasonable jurors could find by a preponderance of evidence that the
> plaintiff is entitled to a verdict . . . .

Anderson, 477 U.S. at 252.  A fact is "material" only if it will affect the outcome of a lawsuit

under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such

that a reasonable fact finder could return a verdict for the nonmoving party.  See id.

      Once the moving party has properly supported its showing of no triable issue of fact and of

an entitlement to judgment as a matter of law, the non-moving party "must do more than simply

show that there is some metaphysical doubt as to material facts."  Matsushita, 475 U.S. at 586; see

also Anderson, 477 U.S. at 247-48.  The non-moving party must "go beyond the pleadings and by

[its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at

324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to

raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item,

each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla'

threshold"), cert. denied, 507 U.S. 912 (1993).

**II. Discussion**

<u>Qualified Immunity as to Plaintiff's Federal Claims</u>

Plaintiff's Amended Complaint alleges that Trooper Defendants engaged in selective enforcement, unreasonable search and seizure, and the use of excessive force in violation of 42 U.S.C. § 1983.  (Compl. ¶¶ 13-14.)   To recover under § 1983, a plaintiff must establish that a state actor engaged in conduct that deprived him of "rights, privileges, or immunities" secured by the Constitution or laws of the United States.  <u>Wilson v. Russo</u>, 212 F.3d 781, 786 (3d Cir. 2000). In the present Motion for Partial Summary Judgment, the Trooper Defendants argue they are shielded from liability by qualified immunity on all constitutional claims brought against them under § 1983.

The doctrine of qualified immunity shields government officials from civil damages under federal law if their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). To determine whether a defendant is entitled to qualified immunity from a civil rights action, the Supreme Court has directed that trial courts conduct a two-step analysis.  <u>See</u> <u>Saucier v. Katz</u>, 121 S.Ct. 2151, 2155-56 (2001).  First, the court must determine whether, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right."  <u>Id.</u> at 2156.  If the answer to this threshold question is no, meaning that no constitutional violation has occurred, then the matter of qualified immunity is obviated, and the Court need not inquire further.   If, however, it is possible on the facts presented by a plaintiff that a defendant may have violated the plaintiff's constitutional rights, then the court must reach the second step of the analysis.

Step two requires a court to ask whether the right at issue was clearly established at the time of the incident, taking into consideration the specific context of the case.  Id.  The Saucier court stressed that to ascertain whether a right was clearly established, it must be identified with sufficient particularity so as to allow the conclusion that a reasonable official was on notice that his or her behavior would violate that right.  See id. at 2156-57; Wilson v. Layne, 526 U.S. 603, 615 (1999); Anderson v. Creighton, 483 U.S. 635, 640 (1987).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 121 S.Ct. at 2156. See also Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002).

Though tailored to the factual scenario presented by the plaintiff, the focus of this step is solely upon determining what the law required.  See Bennett, 274 F.3d at 136-37.  As the Anderson court explained, the very action in question need not have been held unlawful for the right to be considered clearly established.  See Anderson, 483 U.S. at 640.  Rather, the "clearly established" inquiry addresses the officer's understanding of the legality or illegality of his behavior at the time of the incident.  See Saucier, 121 S.Ct. at 2156-57; Wilson, 526 U.S. at 615. A court analyzing the applicability of qualified immunity must look to cases of controlling authority.  See Wilson, 526 U.S. at 617.  "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."  See Saucier, 121 S.Ct. at 2156-57.

Importantly, qualified immunity is not a mere defense from liability; it is "an entitlement not to stand trial or face the other burdens of litigation."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  Accordingly, the Supreme Court has repeatedly stressed the importance of resolving

8

immunity questions at the earliest possible stages of litigation.  See Saucier, 121 S.Ct. at 2156.

The responsibility to decide issues of qualified immunity early in the litigation, however, is often in tension with the need to resolve factual disputes relevant to defendant's conduct.  In other words, "the standard for granting or denying a motion for summary judgment does not change in the qualified immunity context."  Curley v. Klem, 298 F.3d 271, 282 (3d Cir. 2002).  "Just as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis".  Id. at 278.   Determining the existence of a clearly established right and the objective reasonableness of the defendant's actions are questions of law for the court to decide, but any disputed issues of historical fact relevant to the courts determination must be submitted to the jury.  Id.; Mantz v. Chain, 239 F. Supp. 2d 486, 495 (D.N.J. 2002).  "Where factual issues relevant to the determination of qualified immunity are in dispute, the Court cannot resolve the matter as a question of law" on a motion for summary judgment.  Hill v. Algor, 85 F. Supp. 2d 391, 401 (D.N.J. 2000).

Therefore, for purposes of this motion, Defendants are entitled to summary judgment only if this Court determines, based on the undisputed facts in the record, that Defendants reasonably believed that their conduct was lawful in light of clearly established law and information known to them at the time of the alleged constitutional violation.  This Court can not, however, grant summary judgment to the Defendants if disputed issues of material fact exist relevant to the Court's determination of Defendants "objective reasonableness."

Section 1983 Claim Against Individual Officers Based on Selective Enforcement

Count One of Plaintiff's Amended Complaint accuses Trooper Defendants of violating his

Fourteeth Amendment rights guaranteed by the United States Constitution and the equivalent section of the New Jersey State Constitution by subjecting him to unlawful racial profiling.  (Am. Compl. ¶ 77(a)-(d).)   Defendants argue that they are entitled to qualified immunity on this claim. (Def. Br. 47.)

The Equal Protection Clause of the Fourteenth Amendment proscribes selective enforcement of the law based upon race.  <u>Whren v. United States</u>, 517 U.S. 806 (1996).   In order to establish a selective enforcement claim against an officer, a plaintiff must show that "the challenged law enforcement practice had a discriminatory effect and was motivated by a discriminatory purpose."  <u>Carrasca v. Pomeroy</u>, 313 F.3d 828, 234 (3d Cir. 2002).

This Court's first analysis is to consider whether the facts alleged, viewed in a light most favorable to the party asserting the injury, establishes a violation of a constitutional right. Plaintiff's Amended Complaint alleges that on January 6, 1999, while he was a passenger in a car traveling westbound on Route 78, Defendants Callahan and Mandziuk racially profiled him.  (Am. Compl. ¶ 35-42.)   Specifically, Plaintiff alleges that as the police cruiser passed Plaintiff's car, Defendant Mandziuk "craned his neck" to look at who was inside the vehicle driven by Mr. McCallop. (Pl. Stat. of Mat. Facts ¶ 5; Am. Compl. ¶ 40).   Plaintiff contends that Defendants did not make any efforts to effectuate a stop until they discovered the race of the vehicle's occupants. (Pl.'s Stmt. of Mat. Facts ¶¶ 23, 30.)   Additionally, Plaintiff alleges that Defendants detained and then searched the Plaintiff based on his race and under circumstances in which similarly situated, non-minority persons would not have been searched.  (Am. Compl. ¶ 77 (b)-(d); Pl. Stat. of Mat. Facts ¶ 63).

For purposes of their motion, Defendants argue that assuming *arguendo* Plaintiff can

establish discriminatory effect[3], his claim nonetheless fails because he cannot establish the discriminatory purpose prong.  (Def. Br. 50.)   The Supreme Court has held that proving discriminatory intent or purpose "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' its adverse effects upon an identifiable group."  Personnel Adm'r of Massachusetts v. Feeny, 442 U.S. 256, 279 (1979).

The record offers conflicting accounts of when the Troopers recognized Plaintiff's race, whether that was a motivator in the decision to stop, and the events that took place at the Busy Bee.  Plaintiff contends that Defendants learned the race of the vehicle occupants before making any effort to effectuate a stop. (Pl. Stat. of Mat. Facts. ¶ 37).  In fact, Plaintiff alleges that Defendant Mandziuk had determined that the driver of the Chevy was a black male before deciding to pull the car over.  (Id.; Mandziuk Dep. 398:24-400:14, Dec. 23, 2004.)   Plaintiff cites to Defendant Mandziuk's deposition testimony which provides:

> Q:      Is it fair to say that you were able to – one of the ways in which you were
>          able to recognize that car is that you were able to – that the same people
>          exiting that car were the same two people that you saw inside the car when
>          you were driving along Route 78?
> A:      Yes.
> Q.      You recognized the individuals as the same people who were in the car?
> A.      From my vantage point they appeared to be the same.  It was the same car
>          and everything else, so, yes I would say it was them.
> Q:      What were the features that indicated to you that it was the same
>          individuals?
> A:      Well, the color of the car.  I knew the driver of the car was a black male.

---

[3]The discriminatory effect prong requires a plaintiff to establish that he or she is a member of a protected class and that similarly situated members of an unprotected class were not prosecuted for the same allegedly unlawful conduct.  Carrasca, 313 F.3d at 834.  This can be proven by naming specific members of an unprotected class not selected for the same search, or by submitting statistical evidence of bias.  Bradley v. U.S., 299 F.3d 197, 206 (3d Cir. 2002).  Plaintiff's Amended Complaint contains several allegations of a pattern and practice of racial profiling by members of the New Jersey State Police. (Am. Compl. ¶¶ 6-34.)

> Other than that, I don't know if I remember recalling at least what the
> driver's shirt was.  It's hard – I don't recall.

Mandziuk Dep. 398:24-400:14.  The Defendants, on the other hand, argue that it is "undisputed"

that the Troopers did not know the race of Plaintiff or McCallop when deciding to pull over the

car.  (Def. Stat. of Mat. Facts. ¶ 37).  Likewise, Plaintiff contends that Defendants followed him

throughout the Busy Bee in a harassing manner customary of a racially motivated drug stop. (Pl.

Br. 8).   All of the disputed facts bear on the motivations and justifications of the officials who

effected the stop, and are thus material to the alleged violation of Plaintiff's right to equal

protection.  The issues that remain in dispute are necessary to this Court's determination of

whether the Trooper Defendants are entitled to qualified immunity and therefore this Court cannot

decide the claim on a motion for summary judgment.

> Section 1983 Claim Against Individual Officers Based on Unreasonable Search and
> Seizure

Count One of Plaintiff's Amended Complaint also alleges the Trooper Defendants violated

his Fourth Amendment rights guaranteed by the United States Constitution and the equivalent

section of the New Jersey State Constitution by subjecting him to an unlawful pat down search

and an unlawful strip search.  (Am. Compl. ¶ 77(e)(f).)  Defendants contend they are entitled to

qualified immunity. (Def. Br. 28.)

The threshold inquiry for this Court is whether Plaintiff's allegations, if true, establish a

constitutional violation.  Harlow, 457 U.S. at 818.  Plaintiff alleges that after the Troopers had

searched the rental car, and after Plaintiff had already been subjected to a search by Officer

Mandziuk[4], Officer Callahan conducted an improper pat search of Plaintiff and subjected Plaintiff to an unlawful strip search..  (Pl. Stat. of Mat. Facts ¶ 97.)  Plaintiff further alleges that Officer Callahan grabbed and squeezed Plaintiff's groin area in an attempt to locate drugs and not to look for a weapon as Defendants contend.  (Id. ¶ 98.)  When Defendant Callahan felt a bulge in Plaintiff's pants, he ordered Plaintiff to pull down his pants in the parking lot of the Busy Bee.  (Id. ¶ 100.)   Attempting to comply with Defendants order, Plaintiff exposed his genitals in an effort to show Officer Callahan that he had nothing hidden in his pants.  (Id. 101.)  The Defendants again ordered Plaintiff's to pull down his pants.  (Jackson Dep. 215:19-21.)

"A police officer who observes a violation of state traffic laws may lawfully stop the car committing the violation."  U.S. v. Bonner, 363 F.3d 213, 216 (3d Cir. 2004).  During the course of the stop, an officer may subject the occupants to a pat down search only if the officer has a reasonable articulable suspicion that the occupants might be armed and dangerous.  Id. at 216.  Likewise, an officer must have probable cause to believe that a person possesses weapons or contraband before he may strip-search that person.  DiLoreto v. Borough of Oaklyn, 744 F. Supp. 610, 621 (D.N.J. 1990).   Therefore, Plaintiff has satisfied the first step by alleging a deprivation of an actual constitutional right.

The second step of the qualified immunity analysis is to determine whether that right was clearly established at the time of the alleged violation.  In Terry v. Ohio, the Supreme Court established a strictly limited exception to the Fourth Amendment's general requirement that both

---

[4]Plaintiff contends that at the direction of Officer Mandziuk he had already emptied his pockets and submitted to a patdown search before Trooper Callahan searched him.  (Dep. of Jackson 194:12-16, 196:5-7.)  Defendants have not moved to dismiss this claim and so for purposes of this motion, viewing the facts in a light most favorable to Plaintiff, the Court will accept this fact.

probable cause and a warrant are necessary for a search:

> [W]here a police officer observes unusual conduct which leads him to reasonably conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

392 U.S. 1, 30 (1968). Under Terry, a totality of the circumstances test is applied to determine whether reasonable suspicion existed. Id. at 22-24. The Supreme Court later re-emphasized the need to consider all relevant circumstances when examining reasonable suspicions. U.S. v. Sokolow, 490 U.S. 1, 9 (1989). Defendants do not brief the clearly established prong of their qualified immunity claim. This Court finds that Terry and its progeny provide sufficient guidance to reasonable officers to make clear that searching Plaintiff would only be permissible under the Fourth Amendment if they had a reasonable suspicion of legal wrongdoing and that Plaintiff was armed and dangerous.

Since the law was clear at the time of the alleged violation, Defendants can be granted qualified immunity only if their conduct in searching Plaintiff, even if a violation of the Fourth Amendment, was a violation a reasonable officer could have committed. See Lee v. Mihalich, 847 F.2d 66, 69 (3d Cir. 1988). Defendants point to the following circumstances and factors to justify their search of Plaintiff: (1) that Plaintiff appeared nervous and was pacing back and forth during the questioning of McCalop; (2) inconsistencies in the stories given by McCalop and Plaintiff regarding their identities, who rented the vehicle, and the origin, destination, and reason for their trip; and (3) Callahan's observation that Plaintiff's pants zipper was open and had not

14

been open previously.

All of the Defendants purported factors, however, are in dispute.  In opposition to the claim that Plaintiff seemed nervous, Plaintiff points to Trooper Callahan's inconsistent deposition testimony describing Plaintiff's demeanor as "calm," and then as nervous and tense.[5]  (Callahan Dep. Vol. I at 137:22 to 138:8.)   The inconsistencies Defendants describe are also in dispute.  First, Plaintiff points out that these inconsistences came from Mr. McCalop and not from Plaintiff.  (Pl. Br. 40.)  Plaintiff also contends that there were no inconsistencies as to the identity of the car's renter.  Rather, Plaintiff claims, McCalop simply could not identify who had rented the car.  (Id.)  Likewise, Plaintiff claims that both Plaintiff and McCalop stated that their destination was North Carolina when asked. (Pl. Br. 40 (citing Def. Br. 13-14).)

The factual predicate of Plaintiff's claim is vigorously contested.  These genuine issues of material fact which are a necessary to the determination of the Troopers' right to qualified immunity are issues of fact for the jury and therefore, summary judgment is denied.

<u>Section 1983 Claim Against Individual Officers Based on Use of Excessive Force</u>

Count One of Plaintiff's Amended Complaint accuses Trooper Defendants of using excessive force in violation of Plaintiff's Fourth Amendment rights.  (Am. Compl. ¶ 77(g).)   A claim for excessive force under the Fourth Amendment requires a plaintiff to show that a seizure

---

[5]The deposition testimony was as follows:
> Q:    What was Mr. Jackson's demeanor up until this point?
> A:    He was – both of them were calm.  I think Mr. Jackson was, I don't know if edgy could be the word that I would use, nervous, pacing and just kind of wound up, but still polite in his demeanor.  Not wound up, other than nervous, exhibiting nervous demeanor, just packing and he just seemed tense.

(Dep. of Callahan 137:22 to 138:8.)

15

occurred and that it was unreasonable.  Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999).
Defendants claim they are entitled to qualified immunity.

In determining whether the facts alleged establish a claim for excessive force, the Court
must determine whether the Troopers "actions [were] objectively reasonable in light of the facts
and circumstances confronting [them], regardless of [their] underlying intent or motivation."
Graham v. Connor, 490 U.S. 386, 297 (1989).  Whether the force was reasonable will depend on
"the facts and circumstances of each particular case, including the severity of the crime at issue,
whether the suspect pose[d] an immediate threat to the safety of the officers or others, and
whether he [was] actively resisting or attempting to evade arrest by flight."  Id. at 396.

In the instant case, Plaintiff alleges that after he fell down the embankment, Defendant
Troopers Callahan, Mandziuk, and Francis followed him.  At the bottom of the embankment,
Plaintiff alleges the Troopers beat him with a baton or some other blunt object.    Plaintiff further
alleges that the Troopers sprayed him with oleo capsicum (pepper) spray while he was curled in a
fetal position offering no resistance. The facts, viewed in the light most favorable to Plaintiff, are
sufficient to support a claim of excessive force.

The historical facts pertaining to Plaintiff's claim are disputed by Defendants.  Defendants
contend that any injuries Plaintiff received were a result of his fall down the embankment.
Defendants further claim that none of the Troopers were carrying any blunt objects with them
during the events of this case.  (Def. Br. 43-45.)  These disputed issues of material fact regarding
Trooper Defendants use of force are questions which a jury must resolve before this Court can
properly determine whether the Troopers are entitled to qualified immunity.  Accordingly, the
Court will deny summary judgment with respect to Plaintiff's excessive force claim.

16

**DEFENDANT WILLIAM'S MOTION TO AMEND ANSWER**

This case was originally filed by Plaintiff, acting without counsel, in October 2000.  This Court appointed counsel for Plaintiff and granted Plaintiff until May 14, 2004 to amend his Complaint and join new parties.  Accordingly, on or about May 14, 2004, Plaintiff filed his Amended Complaint naming Carl Williams, former Superintendent of the New Jersey State Police, as a Defendant.  On or about November 29, 2004 Defendant Williams filed his Answer asserting ten affirmative defenses.  Defendant Williams, however, did not include an affirmative defense asserting the bar of the statute of limitations.  On or about July 8, 2005, Defendant Williams filed the instant motion [docket item # 61] to Amend his Answer to assert the additional affirmative defense of the statute of limitations.

**I.  Standard of Review**

Rule 15(a) of the Federal Rules of Civil Procedure provides, "a party may amend its pleadings only by leave of court or written consent of the adverse party; and leave shall be freely given when justice so requires."  FED.R.CIV.P. 15(a).  The decision to grant leave to amend rests within the sound discretion of the trial court.  Zenith Radio Corp. v. Hazeltine Research Inc., 401 U.S. 321, 330 (1970).   In the absence of undue delay, bad faith or dilatory motive on the part of the movant, leave to amend should be freely given.  Foman v. Davis, 371 U.S. 178, 182 (1962). The burden to demonstrate good cause to amend is on the movant.  Leased Optical Departments-Montgomery Ward, Inc. v. Opti-Center, Inc., 120 F.R.D. 476, 478 (D.N.J. 1988).

A trial court's discretion to grant leave to amend is tempered by considerations of prejudice to the non-moving party.  Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J. 1990).  "In the absence of substantial or undue prejudice, denial must be

17

grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment."  Id.   Neither incidental delay nor incidental prejudice are a sufficient basis for denial of an amendment; both must be "undue."  Id.   Incidental delay will be considered undue where the movant cannot satisfactorily explain the delay.  Opti-Center, Inc., 120 F.R.D. at 478.  Similarly, incidental prejudice "becomes undue when the opponent shows it would be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered . . . ." Harrison Beverage Co., 133 F.R.D. at 468 (citations omitted).

## II.  Discussion

Plaintiff's original Complaint filed in October of 2000 named "Commissioner NJSP" as a defendant.  Neither Defendant Williams nor his attorney were ever served or received a copy of the initial pro se Complaint.  In Plaintiff's Amended Complaint, Defendant Williams was personally named as a Defendant and served on or about August 8, 2004.  Defendant William's attorney knew that the original pro se Complaint named "Commissioner NJSP" as a Defendant but without any specific information, filed Defendant William's answer without an affirmative defense asserting the bar of the statute of limitations.  (Certification of George W. Fisher, Esq. ¶¶ 6-8.)  It was not until preparing Defendant William's final pretrial order that counsel realized he had not asserted a statute of limitations defense.  (Id. ¶ 9.)  The lapse in time between Defendant William's Answer and request to amend spanned about eight months.

In opposition to Defendant William's motion to amend his answer, Plaintiff first argues that Defendant Williams waived his statute of limitations defense by failing to timely assert it. (Pl. Br. 2.)  Generally, parties are required to assert any affirmative defenses early in the litigation

18

to avoid surprise or prejudice, and to conserve judicial resources.  Robinson v. Johnson, 313 F.3d 128, 134 (3d Cir. 2002).  Rule 8(c) of the Federal Rules of Civil Procedure provides that:  "In pleading to a preceding pleading, a party shall set forth affirmatively . . . statute of limitations . . . and any other matter constituting an avoidance or affirmative defense."  Fed.R.Civ.P.8(c).

Plaintiff cites to numerous cases from other circuits for the proposition that the statute of limitations, as an affirmative defense, is waived if not pled[6].  Plaintiff cites to only one Third Circuit case which held that the statute of limitations should be asserted as early in the litigation as possible and that if not promptly plead, the affirmative defense *could* be waived.  Robinson, 313 F.3d at 136.  It is well established in this Circuit that failure to raise an affirmative defense does not always result in waiver.  Eddy v. Virgin Islands Water and Power Auth., 256 F.3d 204, 209 (3d Cir. 2001); Charpentier v. Godsil, 937 F.2d 859, 863 (3d Cir. 1991); see also Pro v. Donatucci, 81 F.3d 1283, 1286 n.2 (3d Cir. 1996).   Rule 15(a) allows for an amendment of a responsive pleading at any time by leave of court to include an affirmative defense, and "leave shall be freely given when justice so requires."  Eddy, 256 F.3d at 209.  Leave to amend will generally be allowed unless such amendment would prejudice the opposing party.

Plaintiff's argues that he will be prejudiced by allowing amendment in this case.  (Pl. Br. 6.)  A motion to amend should be denied where the non-moving party will be "deprived of the opportunity to present facts or evidence" to rebut a defense."  Heyl & Patterson Int'l, Inc. v. F.D.

---

[6]Plaintiff cites to: Jewelers Mut. Ins. Co. v. N. Barquet, Inc., 410 F.3d 2, 11 (1st Cir. 2005) (holding that "[a]ffirmative defenses must be pled or they will generally be deemed waived and excluded from the case."); National Market Share Inc. v. Sterling Nat'l Bank, 392 F.2d 520, 526 (2d Cir. 2004) ("Generally, a failure to plead an affirmative defense results in a waiver."); Horton v. Potter, 369 F.3d 906, 911 (6th Cir. 2004) (holding that responses to pleadings must contain all affirmative defenses and that "[f]ailure to plead an affirmative defense in the first responsive pleading to a complaint generally results in a waiver of that defense.").

Rich Housing of the Virgin Islands, Inc., 663 F.2d 419, 426 (3d Cir. 1981).  Prejudice to the non-moving party "is greater where the tardy amendment will require a reopening of discovery, and it is lessened when the new issue presents solely an issue of law to be determined upon application to the existing facts." Harrison Beverage, 133 F.R.D. at 469.

Since discovery has closed in this case, Plaintiff contends that he will be prejudiced if this Court permits Defendant William's to assert his statute of limitations defense because his ability to respond to the statute of limitations defense would require further development of the facts. (Pl. Br. 7.)  Specifically, Plaintiff claims that discovery is necessary on the issue of whether Defendant Williams had actual or constructive notice of the original pro se Complaint and on the role of the Attorney General's Office and its relationship to the Defendant at the time the original complaint was filed.  (Id. 8.)  Plaintiff argues that this discovery is necessary to make a sufficient relation back argument under Rule 15(c)(3) in response to Defendant William's Motion to Dismiss.

Rule 15(c)(3) of the Federal Rules of Civil Procedure permits an Amended Complaint to "relate back" to the filing of an earlier complaint where the following conditions are met:

> the amendment changes the party or the naming of the party against whom a claim is asserted if [subsection (c)(2)] is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c)(3).  The certification of Defendants counsel in support of Defendant William's motion to amend provides that Defendant Williams had no notice, prior to be being served in August 2004, that any action had been filed against him.  (Cert. ¶ 7.)  Further, Defendant

William's Motion to Dismiss contained an affidavit of Defendant Williams likewise stating that prior to being served with the Amended Complaint, he had no knowledge of Plaintiff's original complaint, nor did he request the Attorney General's Office to provide him with legal representation in the matter or accept service on his behalf.  (Williams Aff. ¶¶ 5-7.)   Together, William's affidavit along with the certification of his attorney provide Plaintiff with sufficient information to oppose the statute of limitations defense.

Furthermore, this Court does not find it necessary to grant Plaintiff further discovery on this issue.  Any information regarding the way in which the Attorney General's office handled the pro se complaint and what Defendant William's relationship was with the Attorney Generals office at that time would not advance Plaintiffs argument.  Knowledge on the part of the Attorney General's office does not create actual knowledge on the part of Defendant Williams such that he could expect to be sued in his individual capacity.   Plaintiff argues that Defendant Williams may be chargeable with "constructive notice" of the suit relying on Garvin v. City of Phila., 354 F.3d 215 (3d Cir. 2003).   Garvin recognized two instances where a court can impute notice under Rule 15(c).  The first is the shared attorney method which applies when the originally named party and the party later sought to be added are represented by the same attorney, the "attorney is likely to have communicated to the latter party that he may very well be joined in the action."  Id. at 223 (citing Singletary v. Pennsylvania Dept. of Corrections, 266 F.3d 186, 196 (3d Cir. 2001).  The second is an "identity of interest" theory available when the parties are so closely related in business or other activities that the commencement of an action against one "serves to provide notice of the litigation to the other."  Id.   Neither of these two theories are applicable here. Defendant Williams, as sued in his individual capacity, is not being represented by State counsel.

Moreover, Defendant Williams as an individual cannot be said to have interest in this litigation so closely related to the State as to share an identity of interest.

This Court finds that amendment of Defendant William's answer to assert the affirmative defense of the statute of limitations would not cause any undue prejudice to the Plaintiff.  This Court is satisfied that under such circumstances, Defendant William's failure to plead his statute of limitations defense in his initial Answer did not effectively waive the defense.  Accordingly, Defendant William's motion to amend is granted.

### DEFENDANT WILLIAM'S MOTION TO DISMISS ON STATUTE OF LIMITATIONS GROUNDS

Count Three of Plaintiffs Amended Complaint alleges that Defendant Williams violated 42 U.S.C. § 1983 by permitting and/or encouraging a pattern and practice of illegal racial profiling within the Division of State Police[7].  (Am. Compl. ¶ 4.)  On or about July 23, 2005, Defendant Williams moved to dismiss Plaintiff's Amended Complaint on the theory that Plaintiff's claims are barred by the applicable statute of limitations.  (Def. Br. 16.)

**Discussion**

Plaintiff's claims against Defendant Williams arise under 42 U.S.C. § 1983.  Section 1983 provides for a federal cause of action but does not provide a statute of limitations to govern accrual.  Accordingly, the Supreme Court has held that claims under § 1983 are best denominated as personal injury actions and are therefore controlled by a state's statute of limitations for personal injury actions.  Wilson v. Garcia, 477 U.S. 261, 280 (1985).  In New Jersey, that statute is N.J.S.A. 2A: 14-2 which provides that any action "for an injury to the person caused by

---

[7]Count Four of Plaintiff's Complaint makes an identical claim based upon the New Jersey Constitution.  (Am. Compl. ¶ 90-3.)

22

wrongful act, neglect or default . . . shall be commenced within 2 years next after the cause of any such action shall have accrued."  See Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989).  Thus, for Plaintiff's claim against Defendant Williams to survive, it must have been commenced within two years after its accrual.

Although state limitations periods are applied in § 1983 cases, accrual of a cause of action under § 1983 is a question of federal law.  Albright v. Oliver, 510 U.S. 266, 280 n.6 (1994); Michaels v. State of New Jersey, 955 F.Supp. 315, 323 (D.N.J. 1996).  Generally, "the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action."  Montgomery v. De Simone, 159 F.3d 120, 126 (3d. Cir. 1998).  In the present case, the incident forming the basis of the litigation occurred on January 6, 1999.  Accordingly, Plaintiff's claim against Defendant Williams likewise accrued on January 6, 1999.

Plaintiff's original pro se complaint naming "Commissioner NJSP" as a Defendant was timely filed on October 20, 2000.  Defendant Williams in his individual capacity, however, was not added as a party until May 14, 2004 when Plaintiff filed his first Amended Complaint.  The Amended Complaint was filed over five years after the date Plaintiff's injury accrued and was, therefore, untimely.

In opposition, Plaintiff argues that his claim against Defendant Williams in his individual capacity is timely because the addition of Defendant Williams in the Amended Complaint relates back under Rule 15(c)(3) to the date of his original complaint.  This Court disagrees.

The "linchpin" of Rule 15(c) is notice.  Schiavone v. Fortune, 477 U.S. 21, 31 (1986). Williams had no actual notice of Plaintiff's original Complaint naming "Commissioner NJSP" as

a defendant.  (Williams Aff. ¶5.)  Plaintiff argues that further discovery may reveal that Defendant

Williams can be charged with constructive notice of the original complaint based upon the way in

which the Attorney General's Office handled the case.  (Pl. Br. 8.)  Plaintiff's initial <u>pro se</u>

complaint asserted claims against the position of "Commissioner NJSP," making it a suit against

the superintendent of the NJSP in his/her official capacity.  Plaintiff's Amended Complaint

removes "Commissioner NJSP" from the case and added claims against Defendant Williams in

his individual capacity.  The characterization of "official capacity" versus "individual capacity" is

not without its practical significance.  A suit against a public servant in his official capacity is a

suit against the public entity employing the public servant.  The real party in interest is the public

entity not the public servant.  <u>Hafer v. Melo</u>, 502 U.S. 21 (1991).  In contrast, a suit against a

public servant in his personal capacity looks to impose personal liability on the servant for actions

under color of law and the real party in interest, therefore, is the public servant.  <u>Hafer</u>, 502 U.S. at

25.  Consequently, Plaintiff's original <u>pro se</u> complaint was against the position of Superintendent

("Commissioner") of the NJSP and, therefore against the State.  This type of claim does not

provide Defendant Williams with constructive notice of the lawsuit.  Thus, Plaintiff's Amended

Complaint does not relate back to the date of the original complaint and the § 1983 claim against

Defendant Williams is therefore barred by the two year statute of limitations.

### CONCLUSION

For the aforementioned reasons, the Court holds: (1) Trooper Defendants motion for

summary judgment is denied; (2) Defendant Williams motion to amend his answer to assert

additional affirmative defenses is granted; and (3) Plaintiff's claims against Defendant Williams

are barred by the two year statute of limitations.  An appropriate order will follow.

_s/ Stanley R. Chesler_
Stanley R. Chesler, U.S.D.J.